IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES SEBEK, | Civil Action No. _____ |
| Plaintiff, | |
| v. | |
| HOSS'S STEAK & SEA HOUSE, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, James Sebek, by undersigned counsel files this Complaint and in support alleges the following.

### I. Jurisdiction

1. The jurisdiction of this Court is invoked pursuant to the Age Discrimination in Employment Act, 29 U.S.C. §626(c)(1), Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, as amended, and 28 U.S.C. §§1331 and 1343(a)(4).

### II. Venue

2. Venue is proper in the Western District of Pennsylvania, in that this action arises out of events that occurred in Fayette County.

### III. Administrative Remedies

3. Sebek has satisfied all procedural and administrative requirements set forth in 29 U.S.C. §626 in that:

   a. On July 22, 2013, Sebek filed a timely charge with the EEOC alleging age discrimination, sex discrimination and retaliation.

   b. Sebek received a Notification of Dismissal from the EEOC dated March 21, 2014.

1

c. This case was filed more than 60 days after filing of the EEOC charge and within 90 days of receipt of the Notification of Dismissal.

## IV. Parties

4. Sebek is an adult individual who resides at 392 Everson Street, Scottdale, Pennsylvania 15683.

5. Defendant, Hoss's Steak & Sea House, Inc., is a Delaware corporation with a registered office address at 170 Patchway Road, Duncansville, Pennsylvania 16635. At all times relevant hereto, Defendant is and was an employer affecting interstate commerce within the meaning of 29 U.S.C. § 630(b) as it employs 20 or more employees and within the meaning of 42 U.S.C. § 2000e(b), as it employs 15 or more employees.

6. At all times relevant hereto, Defendant acted or failed to act by and through its duly authorized agents, servants and employees, who conducted themselves within the scope and course of their employment.

## V. Facts

7. Sebek was employed by Defendant from July 15, 1988 until June 6, 2013.

8. Sebek last held the position of General Manager at Defendant's Belle Vernon location.

9. At all times relevant hereto, Sebek was more than 40 years of age.

10. At the time Defendant fired Sebek, he was 49 years old.

11. On November 4, 2011, Ann McKay, District Manager, met with Sebek at a Japanese restaurant in Belle Vernon and advised Sebek that he was being relocated to the Wheeling location because Defendant's President and Vice President had very little faith in him and if he went to Wheeling, Sebek would look better in their eyes.

12. McKay told Sebek that the President and Vice President felt he "was getting too old" and had been in Belle Vernon too long.

13. McKay explained that the then-General Manager at the Wheeling location was being terminated because "Wheeling was a mess" and he "was too old to do the job." The General Manager she was referring to was in his early 50s at the time.

14. During the November 4, 2011 meeting, McKay also made a comment to Sebek about Defendant not wanting "old, gray-haired managers."

15. McKay repeatedly rubbed the back of Sebek's hand during the November 4, 2011 meeting in an effort to convince Sebek to relocate to Wheeling.

16. Sebek agreed to the relocation because he felt pressured by McKay to do so.

17. While Sebek was working as the General Manager of the Wheeling location, McKay visited the location at least once per week. On several occasions, she made Sebek rub her back in the office.

18. Sebek felt uncomfortable rubbing McKay's back and expressed his discomfort to her.

19. In June 2012, the Wheeling location closed, and Sebek requested to return to the Belle Vernon location because that was what McKay had agreed to at their November 4, 2011 meeting.

20. McKay, however, told Sebek that he would not be returning to Belle Vernon because Amy Topole, who was acting as General Manager at that location in Sebek's absence, was "full of energy" and McKay had guaranteed Topole at least one year as the General Manager of that location.

21. In June 2012, the week after Father's Day, Sebek was placed in the Murrysville location.

22. During the last week of June 2012, McKay went to the Murrysville location where Sebek was working. Sebek and McKay were in the office together, and McKay sat at the desk and complained about her back hurting. She proceeded to pull her shirt up to her neck, exposing her skin and her bra, and told Sebek to rub her back.

23. Sebek told her he was uncomfortable with rubbing her back. McKay said, "Just rub my back." While Sebek was rubbing her back McKay said, "Men need to learn how to do things like Denise, Jennifer, and Amy."

24. In July 2012, Sebek was on the phone with Topole, who told Sebek that McKay said that Sebek's gray hair was showing and that he needed to dye it.

25. In November 2012, Sebek was re-assigned as the General Manager of the Belle Vernon location, and Topole was re-assigned as the Associate Manager at that location.

26. Topole refused to give up the General Manager responsibilities and continuously tried to perform Sebek's job.

27. Sebek complained to McKay about Topole's conduct and was told not to upset Topole because she was pregnant and should not be subjected to any stress.

28. In late-December 2012, Topole took a 14-day vacation, while most managers were only permitted to be out of the building for 9 consecutive days. Sebek brought this to McKay's attention, and McKay indicated she had no problem with Topole taking the extended vacation.

29. In May 2013, Topole took another extended 12-day vacation without any issue.

30. McKay, however, gave Sebek a difficult time about taking any vacation, and Sebek was required to use his vacation only a few days at a time.

31. In January 2013, there was an incident with a violation of Defendant's policy for employing minors.

32. Sebek was not in the building at the time and had not written the schedule that caused the violation of Defendant's policy. Topole had prepared the schedule at issue.

33. McKay told Sebek that he should "be a man" and take the blame because Topole was pregnant and couldn't afford to lose any money, even though it was clear under Defendant's policy that the schedule writer, which was Topole, and the Shift Manager, Heather Smith, should have been responsible for any violation of the policy.

34. Sebek was suspended without pay for this incident even though he had not written the schedule and was not on site when the violation occurred.

35. On January 17, 2013, McKay called Sebek at home to advise him that he would no longer serve on the President's Board and that he was being replaced on the President's Board by Topole.

36. McKay did not provide a reason for the decision to replace Sebek on the President's Board.

37. The President's Board was only for General Managers or upper-level management. Topole was no longer a General Manager as of November 2012.

38. On May 12, 2013, McKay went to Defendant's Belle Vernon location and left a note in the manager's communication log to hire Smith's daughter, who was 15 years old at the time.

39. Sebek sent an e-mail to McKay refusing to hire Smith's daughter because she was 15 years old and at a previous corporate meeting, the General Managers had been strongly advised not to hire 15 year olds. Sebek also reminded Topole and Smith of Defendant's policy regarding hiring 15 year olds and that corporate had strongly advised against hiring 15 year olds.

40. Topole and Smith hired Smith's daughter without Sebek's knowledge.

41. A second violation of Defendant's policy on the hiring of minors arose as a result of the hiring of Smith's daughter.

42. McKay again wanted Sebek to take the punishment for the policy violation, but Sebek refused to do so and referred McKay to the e-mail he had sent to her before the minor was hired.

43. No employee was suspended or written up as a result of this violation, despite Defendant's policy requiring disciplinary action for such an incident.

44. On May 25, 2013, while Sebek was on vacation and Topole was responsible for the Belle Vernon location, an incident occurred with Phillip Driskill, an employee with whom there had been some prior disciplinary issues.

45. On May 25, 2013, Driskill was spraying a hose on the floor during pre-close when another employee, Frank Ace, lifted a fry basket out of the fryer and dripped grease down on to Driskill, burning his neck, arm and leg.

46. Driskill, who suffers from PTSD, reacted to the burn with aggressive behavior by swearing, throwing dishes and kicking the wall.

47. Topole and Smith called Sebek at home to inform him of the incident and the three of them decided to suspend Driskill.

48. Topole called Sebek the following day at home and assured him that everything had been taken care of regarding the incident with Driskill.

49. On June 3, 2013, McKay went to the Belle Vernon location while Sebek was on shift and began yelling at Sebek that he had embarrassed her by not calling her about the incident that happened on May 25, 2013 with Driskill.

50. McKay told Sebek that his punishment would be coming.

51. Sebek explained to McKay that he was on vacation when the incident with Driskill took place and that Smith and Topole had called him to explain the events that had happened that day and the three of them had collectively decided to suspend Driskill.

52. Sebek also explained to McKay that Topole had called him the day after the incident and told him that she had completely taken care of the matter.

53. On June 3, 2013, while McKay was at the Belle Vernon location, Sebek and McKay called Driskill at home and McKay advised him that he was terminated.

54. On June 6, 2013, McKay called Sebek at home and asked him to meet her at the Belle Vernon location.

55. When Sebek arrived at the restaurant, McKay took him to the side room to have a meeting with her and Bob Pleava, Senior Vice President in charge of restaurant operations.

56. During the meeting on June 6, 2013, Sebek was terminated for neglecting to communicate with the District Manager or the Human Resources department about the Driskill incident on May 25, 2013.

57. Neither Topole nor Smith, who were working the day of the incident and responsible for handling the disciplinary action with Driskill, received any type of disciplinary action for neglecting to communicate with the District Manager or the Human Resources department.

58. In fact, on June 10, 2013, Topole, who was about 30 years old, was promoted to General Manager of the Belle Vernon location.

## Count I
## ADEA

59. Sebek incorporates paragraphs 1 through 58 as though the same had been fully set forth at length herein.

60. Defendant promoted a significantly younger employee to assume Sebek's duties and responsibilities.

61. Defendant discharged Sebek because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §623(a)(1).

62. Defendant's violation of the ADEA was willful.

WHEREFORE, Sebek demands judgment as follows:

   a. That Defendant be ordered to reinstate Plaintiff into the position he occupied prior to Defendant's discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

   b. That Defendant be required to compensate Plaintiff for the full value of wages, he would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest until the date Plaintiff is

        offered employment into a position substantially equivalent to the one which Plaintiff occupied on June 6, 2013;

    c.    That Defendant be required to provide Plaintiff with front pay.

    d.    That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date.

    e.    That a final judgment in favor of Plaintiff and against Defendant be entered for liquidated damages in an amount equal to the amount of wages due and owing Plaintiff as provided by 29 U.S.C. §626(b) and 216(b).

    f.    That Defendant be enjoined from discriminating against Plaintiff in any manner that violates the ADEA.

    g.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee;

    h.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

## Count II
### Title VII – Discrimination

63. Sebek incorporates paragraphs 1 through 62 as though the same had been fully set forth at length herein.

64. Defendant fired Sebek because of his sex, male, in violation of 42 U.S.C. § 2000e-2(a)(1).

65. As a direct and proximate result of Defendant's actions, Sebek lost his job and suffered lost wages and benefits, as well as humiliation, inconvenience, mental distress and embarrassment.

WHEREFORE, Sebek demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991 as follows:

    a.    That Defendant be ordered to reinstate Plaintiff into the position he occupied prior to Defendant's discriminatory actions, together with

    all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b.    That Defendant be required to compensate Plaintiff for the full value of wages he would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest until the date Plaintiff is offered employment into a position substantially equivalent to the one which Plaintiff occupied on June 6, 2013;

c.    That Defendant be required to provide Plaintiff with front pay if the Court determines reinstatement is not feasible;

d.    That Defendant be required to compensate Plaintiff for lost benefits, including profit sharing and/or pension benefits until Plaintiff's normal retirement date;

e.    That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

f.    That Defendant be ordered to pay Plaintiff punitive damages;

g.    That Defendant be enjoined from discriminating or retaliating against Plaintiff in any manner prohibited by Title VII;

h.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation, including a reasonable attorneys fee;

I.    That Plaintiff be granted such further legal and equitable relief as the Court may deem just and proper.

    Respectfully submitted:

    ROTHMAN GORDON, P.C.

    */s/ Nikki Velisaris Lykos*
    Nikki Velisaris Lykos
    PA I.D. No. 204813

    310 Grant Street
    Third Floor, Grant Building
    Pittsburgh, PA  15219
    (412) 338-1121
    nvlykos@rothmangordon.com

    Attorneys for Plaintiff